IN THE UNITED STATES DISTRICT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>vs. )<br>)<br>CHADWICK GORDON CLIFTON, )<br>a/k/a "Chad Clifton," )<br>a/k/a "Chad G. Clifton" )<br>) | Case No.: 22-cr-182 (BAH) |

# DEFENDANT'S SENTENCING MEMORANDUM

Chad Clifton made bad, regretful decisions on January 6, 2021. At the Capitol building entrance, he had a chance to turn away and not walk inside. Instead, he chose to enter. Since that time, however, Chad has done all he can to atone for his bad decisions on January 6, 2021. Once he was charged, he quickly and fully admitted to his conduct. He provided any information to investigators and prosecutors, and he has followed up with additional information that has substantially helped investigators. He has continued to work full-time, support his family, and stay engaged in his children's lives. Chad regrets the bad decisions he made on January 6, 2021. He humbly asks that this Court consider his lack of criminal history, efforts at cooperation, ready acknowledgment of guilt, and the impact incarceration would have on his family and fashion a sentence for him that includes a term of home confinement instead of incarceration.

A.   **The 18 U.S.C. § 3553 Factors.**

As this Court is aware, 18 U.S.C. § 3553 sets forth factors for the Court to consider when imposing a sentence. § 3553 seeks to achieve sentences that are "sufficient, but not greater than necessary." Chad acknowledges that he made a tremendous mistake by entering the Capitol building on January 6, 2021. He hopes that if this Court considers the factors set out in § 3553

1

and applies them to Chad, it will conclude that a term of home confinement will be sufficient, but not greater than necessary, to serve the purposes set forth the under the statute.

I. <u>Section (a)(1): The history and characteristics of the defendant.</u>

Chad Clifton grew up in the Charleston, South Carolina, area. The defendant's mother and brother live in the area, and Chad is close to both. Chad is a proud, self-sufficient individual and has been reluctant to turn to his family, including his mother and brother, for support. However, they have indicated that they would remain supportive of him however needed; as seen in Attachment A, Chad is well respected and supported by his community. Chad is closest to his wife, Erin Clifton, and his six children, who live with him and Erin. Chad married Erin in 2014, and they have a five-year-old child together. They also have five other children living with them. Chad is proud to be the primary financial supporter of his family.

Chad has always worked hard and has a career in construction. In 2019 he worked two jobs, one at Maintain Inc. and his own business, Chad Clifton Construction. Since 2021 he has been working solely in his own business, Chad Clifton Construction. Chad works every day, and his business relies exclusively on him. On an average week, he employs twelve individuals and two separate teams that depend on his work. He also has approximately ten jobs going at the same time. He currently has ten jobs pending that will last through March of 2023 and six jobs that are pending to begin next year. Chad is the leading financial contributor to his family. Erin works as a pharmacy technician. However, Chad is responsible for the majority of the families living expenses. Like many families, finances are tight. If Chad is out of work, he anticipates losing several contracts and the income that comes with it, which will impact his family, who relies upon this income.

As much as Chad financially supports his family, he is also critical to the day-to-day

well-being of his family. When Chad is not working, he is at home. He is a fully engaged husband and father. Although finances are always tight, Chad finds ways to spend time with his family. They try to take road trips to the nearby mountains to spend time together, and Chad recently took his family out for a long weekend so the children could take a Polar Express train trip before Christmas. Chad is a humble, hard-working husband and father who is relied upon by his family for financial and emotional support. He has never been in trouble before and hopes the Court will consider this in determining his sentence.

II.     Section (a)(1):  The nature and circumstances of the offense

Chad Clifton has no prior criminal history and has always supported law enforcement. His actions on January 6, 2021, are an aberration. Chad does not make any excuses for his decisions that day. He takes full accountability for his conduct. However, given his convictions, in this case, he wants to be sure the Court fully understands what went into his decision-making on January 6, 2021. First, Chad attended the Trump rally along with thousands of others. He traveled to Washington, D.C., with his neighbor and co-defendant. Chad was initially interested in seeing Trump speak. Although Chad had not been interested in politics for most of his life, he had begun tracking national and local politics more closely in the years leading up to January 6, 2021. The rally inspired Chad. He was inspired by the messages communicated and did not want to miss out on anything. He followed the crowd to the Capitol building, and he followed the crowd up the steps. No doubt Chad was excited about the protests at the Capitol building. He mistakenly saw it as a historical moment where a political point was being made. Chad understands in hindsight how the actions of individuals can influence others, how others influenced his actions, and how his actions influenced others. Had he thought through his decisions more carefully, he would have stayed back from the Capitol building. For that matter,

he never would have traveled to Washington, D.C.

When Chad arrived at the Capitol, he was in the West front of the building. He witnessed police officers with a barricade about 150 feet in front of him and up a set of stone steps. He saw individuals in the crowd throwing things at the police and one individual spraying the police with a fire extinguisher. Chad did not condone this at the time, and it was not his point of being at the Capitol. To the left of where the police were stationed, lines of people were going up the stairs under scaffolding and entering an open door to the Capitol. Chad followed this crowd. Again, Chad felt he was part of a political moment and was caught up in the chaos. He made statements about "breaking past the barrier." However, Chad never moved any barriers or harmed any individuals. Chad paused when he approached the Capitol just before entering the Capitol building. He was concerned that there could be force used against individuals inside. Nevertheless, he chose to go inside, a mistake he regrets.

Once inside the Capitol building, Chad proceeded to follow the crowds. Chad does not dispute the Government's accounts regarding where he walked and how long he was inside. He does not recall there being barriers inside. However, he does not dispute them now. He remembers following the crowds and taking video footage. He does recall three specific instances inside the building. One involved Chad seeing individuals going inside an office. Chad told them not to go inside, not to steal, and not to destroy property. He later locked an office door to prevent this activity. A second instance involved individuals who were throwing litter around the building. Chad saw a man turn over a wastebasket, throwing garbage across the floor. Chad righted the basket and picked up the trash.

A third instance was when Chad decided to leave the Capitol. Again, he saw an individual fighting with the police. Chad unequivocally was not in the Capitol for any violence.

4

Both for his own safety and because he did not believe that was the purpose of his being there. As soon as he saw violence occurring inside the Capitol, he wanted nothing to do with it and left the building.  Chad acknowledges that other violence happened inside the Capitol building. In addition, he acknowledges that violence occurred outside.  However, that was not something he condoned, and he regrets that his actions somehow contributed to that violence or showed support for it.

After leaving the Capitol, Chad returned home.  He stayed in contact with his co-defendant, Dave Johnson, and the two of them became worried that they could be in trouble for entering the Capitol building.  As this Court is aware from the Government's Sentencing Memo., Chad and Dave Johnson texted back and forth regarding the January 6, 2021, Capitol breach.  In one text message, Chad texted Dave about potential violence after the January 6.  Chad was repeating information he had found online and had no intention of committing any future violence.  He was caught up in online rhetoric and often repeated that rhetoric but in no way intended any future violence.

Chad and his co-defendant became concerned that they could be arrested.  They discussed any potential criminal charges and kept each other updated.  When Chad was arrested, he informed his co-defendant.  However, this was a part of their normal communications and was in no way intended to tip off his co-defendant or to warn him about any impending arrest.

Since he was charged, Chad has complied with his bond terms and has not committed any new crimes. However, he wanted to take accountability for his actions quickly, and his attorney sought to plead guilty quickly.  He was fully cooperative with federal agents and prosecutors and offered to sit down with them before his guilty plea and did so as a condition of his guilty plea. In addition, he provided them with documentary evidence from his time at the Capitol. Finally,

he sought to identify individuals of interest to the Government, which he understands had been helpful to other investigations. Since his arrest, Chad has done everything he can to atone for his actions on January 6 and hopes this Court will see this as a reflection of who he is and how his actions on January 6 were an aberration.

    III.    <u>Section (a)(2)(A):  The need for the punishment to reflect the seriousness of the offense, promote respect for the law, and provide a just punishment.</u>

A just punishment, in this case, should consider Chad's conduct within the Capitol building, his efforts to prevent damage to the Capitol, and his efforts to cooperate after the fact. Chad acknowledges the seriousness of the events that transpired on January 6 and the role he played. However, he only asks that this Court consider that he never intended violence, property damage, or harm to any individual. Although guilty of a crime, Chad hopes that a just punishment would distinguish Chad from others advocating violence and property damage and were not temperate in the way Chad showed himself to be.

    IV.    <u>Section (a)(2)(B):  The need for the punishment to afford adequate deterrence</u>

A period of house arrest followed by supervised release will more than adequately provide specific deterrence for Chad.  There is no question that Chad will never be involved in anything like this again.  Likewise, for individuals like Chad, who, despite having families who rely on them and are otherwise law-abiding citizens, Chad's case will serve as an example that shows, no matter how well-intentioned or law-abiding an individual may otherwise be, they can still get caught up in the moment and make poor decisions that jeopardize their livelihood, reputations, and family.

    V.    <u>Section (a)(2)(C): The need to protect the public from further crimes of the defendant.</u>

The facts of Chad's case show that this was an aberration for Chad.  Given his conviction, in this case, the Court can be confident that the public has nothing to worry about regarding Chad

Clifton.

VI. <u>Section (a)(2)(D): The need to provide the defendant with other correctional treatment in the most effective manner.</u>

Incarceration is not the most effective correctional treatment for Chad. Any goal that incarceration will achieve can be equally achieved through home confinement. This will avoid the impact incarceration will have on Chad's family by keeping him out of work and keeping him from his children.

VII. <u>Parsimony</u>

18 U.S.C. § 3553 begins with the parsimony principle, "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553.

This is especially true because this court can impose a significant term of supervised release for Chad. Additionally, the court can place Chad on home confinement with electronic monitoring for a considerable time. Given the reliance Chad's family has upon him, the impact any incarceration would have on his business and those who rely on his business, and the efforts Chad has made to atone for his actions, Mr. Clifton respectfully asks that this Court sentence him to a term of home confinement on lieu of incarceration.

VIII. <u>Witness List</u>

Pursuant to this Court's Standing Order for Criminal Cases, Mr. Clifton intends to call one witness at sentencing (apart from himself), as follows:

1. Erin Clifton: Erin is Chad's wife. She will speak to Chad's character and how his family needs him and tell the Court how this incident is isolated for Chad.

## Conclusion

In this case, the Court's goals of doing justice and protecting the public can be achieved

with a term of home confinement and supervised release. Such a sentence will send a message that there is a cost to breaking the law for those who entered the Capitol on January 6, 2021. But such a sentence also achieves the other ends and purposes of sentencing. Most importantly, such a sentence will not result in collateral financial hardship to Chad's family and those who rely on his business for work.

Respectfully submitted,

s/*Nathan S. Williams*
Nathan S. Williams (Fed. ID 10400)
Law Offices of Nathan S. Williams
260 W. Coleman Blvd., Ste. B
Mt. Pleasant, South Carolina 29464
(843) 209-6972
nathan@scfederaldefense.com

Charleston, South Carolina

December 29, 2022.